James R. SPRADLIN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–01–00451–CV, 01–01–00452–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 12, 2002.

Rehearing Overruled Jan. 13, 2003.

Charles C. Gregory, III, Tammy Danberg–Farney, Houston, for Appellant.

Kathy Braddock, Assistant District Attorney, Houston, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and RADACK.

## OPINION

TERRY JENNINGS, Justice.

Appellant, James R. Spradlin, the surety on two bail bonds executed for James David Harrison, challenges the trial court's summary judgment in favor of the State in these bond forfeiture proceedings.[1] Appellant presents 12 issues for our review, contending that the trial court erred in granting the State's objections to appellant's summary judgment evidence, granting the State's motion for summary judgment on the bond forfeiture, and denying appellant's motion for summary judgment on the affirmative defense that Harrison was deceased at the time he failed to appear. We affirm.

### Facts and Procedural Background

In 1998, James David Harrison was charged with the felony offenses of delivery of more than 400 grams of a controlled substance and aggravated assault of a public servant. To secure his release from custody pending his trial, Harrison executed two bail bonds in the amount of $100,000 each, with appellant being the surety on each bond. On June 7, 1999, Harrison failed to appear in the trial court as required, and the trial court signed a judgment of forfeiture (judgment nisi) of the bonds in each case the following day.

---

1. The underlying proceedings were styled *The State of Texas v. James David Harrison a/k/a James Harrison and James R. Spradlin.* However, the principal on the bond, Harrison, did not file an answer in the trial court and is not a party to this appeal.

The State then sued Harrison and appellant for the amounts of the forfeited bonds. Appellant answered the lawsuit and raised the affirmative defense that Harrison was deceased at the time he failed to appear in court and thus, appellant was exonerated from having to pay the amount of the bond. The State subsequently moved for summary judgment, asserting that it was entitled to judgment as a matter of law in the amount of the bonds because a valid judgment of forfeiture had been signed and appellant had presented no material fact issue excusing Harrison's failure to appear in court in the criminal proceedings.

Appellant responded to the State's motion and moved for summary judgment on the ground that Harrison's failure to appear in court was due to his death. As summary judgment evidence, appellant presented affidavits of Jill Byler–Harrison (Harrison's wife), Jana Diane Harrison (Harrison's mother), and James Douglas Harrison (Harrison's father). In her affidavit, Jill Byler–Harrison stated that she had not seen her husband since May 30, 1999, had not been contacted by him, did not believe that her husband had attempted to withdraw any funds from their joint bank accounts or use his credit cards after that date, and did not believe he was alive. In her affidavit, Jana Diane Harrison stated that she had not seen her son since Mother's Day of 1999 and did not believe he was alive. In his affidavit, James Douglas Harrison stated that he had not seen or been contacted by his son since about one month prior to his son's disappearance and did not believe his son was alive.

As additional summary judgment evidence, appellant presented records and more than 100 photographs subpoenaed from the custodian of records for the Galveston Police Department concerning its investigation of the June 6, 1999 discovery of Harrison's blood-stained pickup truck. Those police records indicated that Harrison's pickup truck was found in the parking lot of a church in Galveston. The investigating officers reported that the truck's doors were locked and that there was what appeared to be blood on the interior of the truck on the passenger-side seat, door, dashboard, windshield, and window, and outside the truck on a metal footrest and on the ground near the passenger side of the truck. The investigating officers reported that they did not observe any blood trail or "drag marks" leading away from the truck. The officers also found a .32 caliber shell casing on a table within 15 feet of the truck. Harrison's body was not found. The photographs contained in the police investigation file depicted the area where Harrison's truck was found and the interior and exterior of his truck.

The Galveston Police Department's investigation file also contained a report from Texas Department of Public Safety ("DPS") criminalist Javier B. Flores. In his report, Flores noted that the DNA profile of a bloodstain on the passenger door of Harrison's truck indicated that the blood belonged to a man and was "consistent with" a partial DNA profile obtained from a hair brush.[2] Flores also noted that "the nuclear DNA examined from these two items could have had a common source."

Appellant also presented an affidavit from Dr. Wayne G. Mulloy, who stated that he is a licensed physician in Harris

2. Although it appears that the hairbrush was submitted for testing for comparison purposes as a potential source for a sample of Harri-son's DNA, no explanation was given concerning the specific source of the hairbrush.

County and had reviewed 57 of the photographs contained in the Galveston Police Department investigation file. Dr. Mulloy expressed the opinion that, based on reasonable medical probability, a person who suffered wounds such as indicated by the amount of bloodstains in Harrison's truck "could not have survived without immediate hospital care and whole blood transfusions."

The State responded to appellant's summary judgment and objected to portions of his summary judgment evidence on various grounds. The State objected to the affidavits of Harrison's family members on the grounds that they were conclusory, not based on personal knowledge, and based on inadmissible hearsay. The State objected to the affidavit of Dr. Mulloy on the grounds that it was conclusory and did not show Mulloy was qualified to offer the opinions expressed in his affidavit. The State also objected to the records from the Galveston Police Department as not properly authenticated.

In addition, the State offered an affidavit from DPS criminalist Javier Flores, who stated, in part, as follows:

Based upon my analysis of the DNA extracted, I was only able to determine that bloodstain [sic] from the side door of the vehicle and the samples from the hairbrush were from human male donors. I was not able to determine with a reasonable degree of certainty that the bloodstain and hair were from the same donor.

Appellant also raised a no-evidence challenge in his motion for summary judgment, arguing that, because the underlying judgments nisi were defective on their face, the State could not produce evidence sufficient to raise a material fact question concerning their validity.

Following a hearing on the motions, the trial court sustained the State's objections to appellant's summary judgment evidence, granted the State's motion for summary judgment in each case, and denied appellant's motion for summary judgment in each case. Appellant filed a motion and an amended motion for new trial, which were denied. Appellant subsequently filed a notice of appeal in each case.[3]

### Standard of Review

A party moving for a traditional summary judgment has the burden of proving that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 548 (Tex.1985); *Farah v. Mafrige & Kormanik*, 927 S.W.2d 663, 670 (Tex.App.-Houston [1st Dist.] 1996, no writ). When deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d. at 548–49. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon*, 690 S.W.2d at 548–49. When a defendant raises an affirmative defense in opposition to a motion for summary judgment, he must present sufficient summary judgment proof to raise a fact issue on each element of his affirmative defense. *Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex.1994). However, when a defendant moves for summary judgment on an affirmative defense, he must conclusively establish each element

---

**3.** Although appellant's notice of appeal lists "James E. Rose" as an additional appellant, the trial court's summary judgments do not name Rose as a judgment debtor, and he is not named elsewhere as a party to this appeal. Thus, we do not consider him a party to this appeal.

of his affirmative defense as a matter of law, thereby rebutting the plaintiff's cause of action. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995); *Farah,* 927 S.W.2d at 670.

In a no-evidence motion for summary judgment, the movant must specifically state the elements as to which there is no evidence. TEX.R. CIV. P. 166a(i). The burden then shifts to the non-movant to produce evidence that raises a fact issue on the challenged elements. *Id.* When reviewing the grant of a no-evidence summary judgment, we assume all evidence favorable to the non-movant is true and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). A no-evidence summary judgment may not be properly granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact. TEX.R. CIV. P. 166a(i).

When, as here, both parties move for summary judgment, the appealing party may challenge the denial of its own motion as well as the judgment in favor of the prevailing party. *CU Lloyd's v. Feldman,* 977 S.W.2d 568, 569 (Tex.1998). Each party must carry its own burden, however, both as movant and in response to the other party's motion, as non-movant. *Id.*; *James v. Hitchcock Indep. Sch. Dist.,* 742 S.W.2d 701, 703 (Tex.App.-Houston [1st Dist.] 1987, writ denied).

## Validity of Judgments Nisi

In issues one, two, three, five, nine, and 12, appellant contends the trial court erred in granting the State's motions for summary judgment and in denying his no-evidence motions for summary judgment because the underlying judgments of forfeiture were materially defective in that they (1) do not name appellant as surety on the bail bonds, (2) do not recite that Harrison's name was called at the courthouse door, and (3) do not recite the amount of the bonds.

As noted above, the State moved for summary judgment on Harrison's forfeiture of his bonds. With regard to bond forfeiture proceedings, the Code of Criminal Procedure provides as follows:

> Bail bonds and personal bonds are forfeited in the following manner: The name of the defendant shall be called distinctly at the courthouse door, and if the defendant does not appear within a reasonable time after such call is made, judgment shall be entered that the State of Texas recover of the defendant the amount of money in which he is bound, and of his sureties, if any, the amount of money in which they are respectively bound, which judgment shall state that the same will be made final, unless good cause be shown why the defendant did not appear.

TEX.CODE CRIM. PROC. ANN. art. 22.02 (Vernon 1989). When a forfeiture has been declared on a bond, the case is then docketed on the civil docket with the State of Texas as the plaintiff, and the defendant and any sureties as defendants, and the case is governed by the same rules governing other civil suits. *Id.* art. 22.10 (Vernon 1989).

■ "It is well-settled that the State's case in a bond forfeiture proceeding consists of the bond and the judicial declaration of the forfeiture of the bond, which is the judgment nisi. Once this has been established, the defendant must then prove that one of the elements has not been complied with." *Tocher v. State,* 517 S.W.2d 299, 301 (Tex.Crim.App.1975); *McCluskey v. State,* 64 S.W.3d 621, 623 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

■ Here, the State offered, as summary judgment evidence, certified copies of the bonds and judgments nisi in Harrison's criminal proceedings. The judgments read, in part, as follows:

This day came the State of Texas by her attorney; and the name of the Defendant ... who stands charged by INDICTMENT being duly and distinctly called at the door of the Courthouse to come into Court to answer the State of Texas on the charge of a FELONY according to the tenor and effect of his bond on file in this Court, but after a reasonable time and the said Defendant [sic] be and the same is, declared forfeited, and that the State of Texas have and recover of the said Defendant ... as principal ... the said (sureties if any) [appellant] ... the sureties on said bond the sum of $100[,]000.00 dollars.... This judgment will be final unless good cause be shown why the defendant did not appear.

The trial court's original judgments nisi omitted the required statutory recitations that, after Harrison's name was called at the courthouse door, he "d[id] not appear within a reasonable time after such call [wa]s made." *See* TEX.CODE CRIM. PROC. ANN. art. 22.02. However, the code provides that a judgment nisi "shall not be set aside because of any defect of form; but such defect of form may, at any time, be amended under the direction of the court." *See* TEX.CODE CRIM. PROC. ANN. art. 22.12 (Vernon 1989). To add the omitted recitations, the trial court subsequently signed orders amending its judgments nisi.

The trial court's amendatory orders revised its judgments nisi to read, in part, as follows:

This day came the State of Texas by her attorney; and the name of the Defendant ... who stands charged by INDICTMENT being duly and distinctly

[sic] at the door of the Courthouse to come into Court to answer the State of Texas on the charge of a FELONY according to the tenor and effect of his bond on file in this Court, but after a reasonable time and the said Defendant *not appearing and having wholly made default, it was therefore ordered by the Court that the bond of said Defendant* be and the same is, declared forfeited ...

(Emphasis added.)

Appellant contends that, the trial court's amendatory orders constituted amended judgments and must be read on their own, without reference to the original judgments nisi. Appellant further argues that, because the amendatory orders do not recite appellant's name or name him as a surety, do not state the amount of the bond, and do not show that Harrison's name was called at the courthouse door, they render the trial court's judgments nisi invalid.

Here, the trial court included an ellipsis at the end of the amending language of its order in each case. In doing so, the trial court indicated its intention that the portions of the judgments nisi being amended were not to be construed as constituting new, entire judgments. Rather, we read the trial court's amendatory orders to revise only the specific text indicated, while leaving all other original text from the judgments nisi unchanged. Because the original judgments nisi named appellant as the surety on Harrison's bond and recited the amount of the bond, we conclude the judgments nisi were not defective in these respects.

■ Appellant correctly points out that, although the trial court's original judgments nisi recited that Harrison's name was "duly and distinctly called at the door of the courthouse," the amendatory orders

omitted the word "called" from the recitations. However, as noted above, a judgment nisi may not be set aside because of a defect of form. TEX.CODE CRIM. PROC. ANN. art. 22.12. Moreover, appellant does not argue that Harrison did not receive notice of the criminal proceedings, or that Harrison's name was not called at the door of the courthouse as required. Rather, he argues that Harrison was deceased at the time his name was called. Based on the record presented, we conclude the trial court's omission of the word "called" from its amendatory orders did not render its judgments nisi invalid.

We hold that the trial court's judgments nisi in these cases were not rendered invalid by their subsequent amendment and that, as amended, the judgments nisi were valid. Accordingly, the State met its prima facie burden of proof to establish its entitlement to judgment against appellant as a matter of law in the amount of the bonds, and the trial court did not err in denying appellant's no-evidence motions for summary judgment on this ground.

We overrule appellant's issues one, two, three, five, nine, and 12.

### Exoneration

In issues four, six, eight, and 10, appellant essentially argues that the trial court erred in denying his motion for summary judgment and in granting summary judgment for the State because appellant established Harrison's death as a matter of law, or alternatively, that a material fact issue existed regarding whether Harrison was deceased at the time he failed to appear for his criminal proceedings.

In a bond forfeiture proceeding, a surety may answer and show cause why the defendant did not appear. TEX.CODE CRIM. PROC. ANN. art. 22.11 (Vernon 1989). To avoid liability on the forfeited bond, a surety may offer proof on the affirmative defense of exoneration, as provided by the Code:

The following causes, and no other, will exonerate the defendant and his sureties, if any, from liability upon the forfeiture taken:

. . . .

2. The death of the principal before the forfeiture was taken.

3. The sickness of the principal or some uncontrollable circumstance which prevented his appearance at court, and it must, in every such case, be shown that his failure to appear arose from no fault on his part. The causes mentioned in this subdivision shall not be deemed sufficient to exonerate the principal and his sureties, if any, unless such principal appear before final judgment on the bond to answer the accusation against him, or show sufficient cause for not so appearing.

TEX.CODE CRIM. PROC. ANN. art. 22.13 (Vernon 1989).

Appellant contends that his summary judgment evidence established as a matter of law, or alternatively, raised a material fact issue on, his affirmative defense of exoneration based on Harrison's alleged death prior to his failure to appear in court, and thus, the trial court erred in denying appellant's motion for summary judgment and in granting the State's motion for summary judgment.

#### *"Uncontrollable Circumstance"*

█ Appellant urged his motion for summary judgment on an affirmative defense of exoneration based on subsections (2) and (3) of article 22.13. The State argues that appellant's reliance on article 22.13(3) was improper because no evidence was ever presented that Harrison's failure to appear in court was the result of an illness or incarceration elsewhere and be-

cause Harrison never filed an appearance in the trial court to "answer the accusation against him, or show sufficient cause for not so appearing." *Id.*

■ Subsection 3 applies as a potential basis for exoneration when a defendant is prevented from appearing in court due to a serious illness or incarceration in another jurisdiction. *See Hill v. State,* 955 S.W.2d 96, 98–100 (Tex.Crim.App.1997) (discussing requirements of Article 22.13(3)). Here, appellant raised the affirmative defense of exoneration based on a theory that Harrison was deceased, not that he was prevented from appearing in court due to an illness or incarceration in another jurisdiction. Further, Harrison did not answer or appear in the suit below.

We conclude that, based on the record presented, appellant did not prove as a matter of law, or raise a material fact question, that he was entitled to an affirmative defense under article 22.13(3), and we hold the trial court did not commit error in denying appellant's motion for summary judgment on this ground.

Before examining the summary judgment evidence concerning whether Harrison was deceased at the time he failed to appear in court, we must first address issues of waiver raised by both parties.

***Waiver***

■ The State contends that, in the trial court, appellant conceded the existence of a material fact issue concerning whether Harrison was deceased at the time he failed to appear in court. The State argues that such concession amounted to a judicial admission and that, consequently, appellant may not now complain that the trial court erred in denying his motions for summary judgment on this ground.

■■ A judicial admission must be a clear, deliberate, and unequivocal statement, and occurs when an assertion of fact

is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 905 (Tex.2000). A judicial admission bars a party from disputing a fact and relieves his adversary from having to present proof of the fact. *Id.*

The State argues that comments made by appellant's counsel during the non-evidentiary hearings pertaining to appellant's motions for new trial constituted judicial admissions. The record of those hearings indicates appellant's counsel made reference to contentions he had presented during the hearing on the parties' motions for summary judgment regarding the existence of a material fact issue concerning whether Harrison was deceased. Although we have a record of appellant's counsel's comments made during the hearing on appellant's motions for new trial, we have no record of the hearing on the parties' motions for summary judgment, and thus, we cannot review appellant's actual contentions or the context in which such were made to determine whether they constituted judicial admissions. Accordingly, we cannot conclude from this record that appellant judicially admitted during the hearing on his motion for summary judgment that it should have been denied on the issue of whether Harrison was deceased at the time he failed to appear for court.

■ In addition, both parties contend that the other's pleadings and briefs concede the existence of a material fact issue on the question of whether Harrison was deceased and contain judicial admissions. We disagree. In their pleadings filed in the trial court and briefing to this Court, both parties argue, *in the alternative,* that a material issue of fact existed concerning Harrison's death. Assertions of fact,

pleaded in the alternative, do not constitute judicial admissions. *Hughes Wood Prod., Inc. v. Wagner*, 18 S.W.3d 202, 207 (Tex.2000); *Elliott v. Methodist Hosp.*, 54 S.W.3d 789, 797 (Tex.App.-Houston [1st Dist.] 2001, no pet.). Therefore, we conclude that neither party has conceded the existence of a material fact issue regarding whether Harrison is deceased.

### Objections to Summary Judgment Evidence

Because the State presented, and the trial court sustained, objections to appellant's summary judgment evidence, we must next determine whether the trial court erred in doing so before we review the summary judgment record to determine whether appellant proved as a matter of law or raised a material fact issue on the affirmative defense of exoneration.

In issues seven and 11, and a portion of issue four, appellant contends the trial court erred in sustaining the State's objections to portions of his summary judgment evidence.

■ We review a trial court's admission or exclusion of evidence for abuse of discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). To obtain reversal of a judgment based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error probably caused "the rendition of an improper judgment." TEX.R.APP. P. 44.1(a)(1); *see also Alvarado*, 897 S.W.2d at 753–54.

### Harrison's Family

In its response to appellant's motion for summary judgment, the State objected to portions of the affidavits of Harrison's wife, mother, and father. Specifically, the State objected to portions of these affidavits as being based on hearsay and not

personal knowledge. *See* TEX.R. EVID. 801. Affidavits used as summary judgment evidence must contain facts that would be admissible at trial, must state that the facts contained in the affidavit are true, and must be based on the affiant's personal knowledge. TEX.R. CIV. P. 166a(f).

■ With regard to the affidavit of Harrison's wife, the State objected to statements in the affidavit that Harrison had not attempted to contact his sons, had not attempted to withdraw funds from his bank accounts, and had not used his credit cards following his disappearance as not being based on personal knowledge. In her affidavit, Harrison's wife did not explain the basis, other than her marital status, for her personal knowledge regarding these matters. We conclude that this testimony, standing alone, does not meet the requirements for admissibility to constitute competent summary judgment evidence, and we hold the trial court did not abuse its discretion in excluding such statements from the summary judgment evidence.

The trial court also sustained the State's objections to portions of the affidavits of Harrison's mother and father as based on hearsay and not personal knowledge. In his brief, appellant does not specifically challenge these rulings, but argues that the affidavits were admissible for the limited purpose of proving when Harrison had last contacted his parents before his disappearance. We note that, in its brief, the State does not object to these affidavits if offered solely for this limited purpose.

### Dr. Mulloy

■ As noted above, the trial court also sustained the State's objections to the affidavit of Dr. Mulloy. Specifically, the State objected to Dr. Mulloy's affidavit on the grounds that the affidavit does not establish Dr. Mulloy's expert qualifications

to express the opinion that a person could not survive without immediate medical attention after sustaining the type of wounds that resulted in the amount of blood loss as shown in the police investigation photographs of Harrison's truck.

■■■ An expert may be qualified to give an opinion by "knowledge, skill, experience, training, or education." TEX.R. EVID. 702. To be admissible, the testimony of an expert witness must set forth the expert's qualifications to give the opinion. *See United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30–31 (Tex.1997) (holding expert not qualified to testify regarding transmission of virus through blood transfusion where expert had no training or experience related to blood transfusions).

Here, with regard to his qualifications, Dr. Mulloy's affidavit recites merely that he is a licensed physician. His affidavit contains no explanation concerning his field of specialty or area of practice, his training, his experience with treating traumatic injuries, or any additional information from which to determine whether he is qualified to express the opinions contained in his affidavit. Therefore, we conclude the trial court did not abuse its discretion in excluding Dr. Mulloy's affidavit.

We overrule appellant's issues seven and 11.

### Police Investigation Records

■■■ The trial court sustained the State's objections to the Galveston Police Department records offered by appellant as summary judgment evidence. The State objected to these records on the grounds that they were not properly authenticated and contained no indication concerning how many pages were contained in the original file. The State also objected to appellant's summary judgment evidence on the ground that it was not

accompanied by a statement of intent to use unfiled discovery products as summary judgment evidence, as required by Rule 166a(d). TEX.R. CIV. P. 166a(d).

With regard to appellant's inclusion of a "statement of intent," the record indicates that, in his motion for summary judgment and in his response to the State's motion for summary judgment, appellant included a statement of intent to use the unfiled discovery products attached to those pleadings as summary judgment evidence. Those pleadings were timely served on the State in advance of the hearing on the parties' motions. Thus, appellant met the requirements of Rule 166a(d).

Business records of regularly conducted activity, if accompanied by an affidavit that complies with Rule 902(10), are not excluded by the hearsay rule. TEX.R. EVID. 803(6). Extrinsic evidence of authenticity is not required as a condition precedent to admissibility with respect to business record accompanied by an affidavit that "substantially complies" with the provisions of Rule 902(10). TEX.R. EVID. 902(10). Here, appellant subpoenaed records from the Galveston Police Department custodian of records, who responded under oath to appellant's deposition on written questions and supplied the requested records. With the exception of an indication of the number of pages contained in the records, the custodian's affidavit contains the information and recitations required under Rule 902(10). Therefore, we conclude that the custodian's affidavit "substantially complied" with the requirements of Rule 902(10) and that the Galveston Police Department records attached thereto were admissible. Accordingly, we hold the trial court abused its discretion in excluding such records from the summary judgment evidence.

We sustain the portion of appellant's issue number four concerning the trial

court's exclusion of the police records from the summary judgment evidence.

### Evidence of Harrison's Death

■ We next examine the summary judgment record, including the evidence we have held was improperly excluded, to determine whether the trial court's decision in excluding such summary judgment evidence probably caused "the rendition of an improper judgment." TEX.R.APP. P. 44.1(a)(1). Appellant argues the summary judgment evidence established as a matter of law, or alternatively raised a fact issue, that Harrison was deceased at the time he failed to appear for court.

As noted above, the competent summary judgment evidence consisted of the investigation file from the Galveston Police Department concerning its investigation of the June 6, 1999 discovery of Harrison's blood-stained pickup truck in the parking lot of a church. The investigating officers reported that the truck's doors were locked and that there was what appeared to be blood "splattered" throughout the passenger side of the truck's interior, as well as blood outside the truck on a metal footrest and on the ground near the passenger side of the truck. The investigating officers reported that they did not observe any blood trail or "drag marks" leading away from the truck. The officers also found a .32 caliber shell casing on a table within 15 feet of the truck. No body was found.

The police investigation file also contained a report from DPS criminalist Flores, who observed that the DNA profile of a bloodstain on the passenger door of Harrison's truck was "consistent with" a partial DNA profile obtained from a hairbrush in that both samples were from men. Flores noted in his report that "the nuclear DNA examined from these two items could have had a common source." However, in a subsequent affidavit offered by the State, Flores explained that he could not determine "with a reasonable degree of certainty" that the bloodstain and the DNA from the hairbrush were from the same person.

In support of his contention that the summary judgment evidence presented was sufficient to raise a fact question concerning Harrison's death, appellant relies on a comparison of the evidence presented here to that presented in *McDuff v. State*, 939 S.W.2d 607, 612 (Tex.Crim.App.1997), in which police recovered hair with the same characteristics as the victim's and blood which could not be excluded or included as the victim's from the trunk of the defendant's car. However, in *McDuff*, the jury was also presented with, among other things, accomplice eyewitness testimony that the defendant forcibly abducted and sexually assaulted the victim and struck her so hard that the blow sounded like a tree limb cracking and had sufficient force to knock her down and "bounce" her off the ground, and expert forensic testimony that such a blow would have resulted in fatal neurological pathway damage. *Id.* at 615. Based on the material difference in the evidence presented here from that in *McDuff*, we conclude appellant's reliance on *McDuff* is without merit.

Based on the record presented, we conclude the competent summary judgment evidence did not establish, as a matter of law, that Harrison was deceased at the time he failed to appear in court in his criminal proceedings. Thus, appellant was not entitled to summary judgment on his affirmative defense of exoneration under article 22.13(2).

Moreover, although the evidence contained photographs of Harrison's blood-stained, abandoned truck, no evidence was presented to raise a fact question that the blood depicted was Harrison's. Therefore, we also conclude that the competent sum-

mary judgment evidence did not raise a fact question concerning whether Harrison was deceased at the time he failed to appear in court in his criminal proceedings. Thus, we hold the trial court did not commit error in granting the State's motions for summary judgment.

Accordingly, we overrule appellant's issues six, eight, and 10 and the remaining portion of issue four.

### Conclusion

We affirm the judgments of the trial court.