COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-400-CV

FRANK CORNISH, IV AND      APPELLANTS

ROBIN CORNISH 

V.

WASHINGTON MUTUAL BANK, FA APPELLEES

AND WELLS FARGO BANK, TEXAS 

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In nine points, Appellants Frank Cornish, IV and Robin Cornish (collectively, “the Cornishes”) appeal the trial court’s grant of summary judgment in favor of Appellees Washington Mutual Bank, FA and Wells Fargo Bank, Texas (collectively, “the Banks”) and the denial of their motion for a no- answer default judgment.

II.  Factual and Procedural Background

This is the case of the alleged faulty foreclosure.  The Cornishes purchased a home at 305 Sheffield Drive in Southlake, Texas, with a purchase money mortgage loan.  The Cornishes fell behind in their mortgage obligations and sought protection in the United States Bankruptcy Code.  They filed bankruptcy three times: in 2001, 2004, and 2005.  Their last bankruptcy filing was dismissed as having been filed in bad faith, and the Cornishes were forbidden from filing any other bankruptcy proceeding until after the final, unappealable disposition of this case or any other litigation either regarding the house at 305 Sheffield Drive or between the parties to this suit.

The Cornishes contended that they entered into a deed of trust dated June 28, 1993, with Bluebonnet Savings Bank, FSB, which then conveyed its interest as beneficiary under the deed of trust to Norwest Bank Texas South Central, who later conveyed the same interest to Washington Mutual Bank.  They asserted that at no time was Wells Fargo conveyed any interest in the property prior to the purported foreclosure, nor did it ever have any contractual rights with the Cornishes entitling it to serve notice to accelerate the note that the deed of trust secures or give notice of trustee’s sale as mortgagee or servicer of the note to the Cornishes.

On the other hand, according to the Banks, the Cornishes have gone for years without paying on their mortgage note or paying any rent, a situation that has obliged the Banks, in order to protect their collateral, to pay the Cornishes’ homeowner’s insurance and taxes, which has provided the Cornishes with cost-free housing.  The Banks also contend that the Cornishes lost title to the house in March 2004 by a foreclosure.

The Cornishes filed suit against the Banks on July 21, 2005, through a wrongful foreclosure action and a suit to try title.  The petition alleged that a foreclosure of the Cornishes’ home sixteen months earlier had been wrongful because of a lack of notice of default, a lack of power by the trustee to conduct the sale, and the property’s status as a homestead.  Because the petition raised certain issues of federal law and bankruptcy law, the Banks filed a notice of removal in federal court on August 27, 2005.  The Cornishes alleged that these actions were all removed to a bankruptcy case that had already previously been closed on April 14, 2004.  On September 21, 2005, while the case was pending in bankruptcy court, the Banks served and filed their answer to the Cornishes’ state court petition in the bankruptcy court.  Also while the case was in bankruptcy court, the Cornishes agreed to file an amended petition in state court to remove all allegations regarding violations of bankruptcy or other federal law; they also agreed not, thereafter, to make any claims under bankruptcy or federal law.  After the filing of that amended petition, the case was remanded to the trial court.

The Cornishes’ amended petition alleged the same previous grounds of wrongful foreclosure and suit to try title.  The Cornishes next filed a motion for no-answer default judgment on January 18, 2006, followed on January 20, 2006, with a first amended motion for no-answer default judgment, with affidavits in support of their request for damages.  The trial court set a hearing on the Cornishes’ default judgment motion for February 2, 2006.  However, prior to that date, the Banks filed a copy of the original answer to the wrongful foreclosure suit which was filed in bankruptcy court after its removal as well as their amended answer to the amended petition.  Thereafter, the court took the hearing off the docket.  

On September 18, 2006, the Banks’ counsel filed a motion for summary judgment, attacking the basis for the wrongful foreclosure suit, and on October 5, 2006, filed a supplement.  The trial court set the motion for hearing on October 27, 2006.  The Cornishes responded to the motion for summary judgment by fax to the district clerk on Friday, October 20, 2006, who file marked the response on Monday, October 23, 2006, and the Banks filed a reply, which included an affidavit of Becky Howell, Director of Foreclosure Operations of the law firm that Washington Mutual hired to foreclose the lien on the Cornishes’ house.  On October 26, 2006, the Cornishes filed a response to the Banks’ reply and challenged the truthfulness Howell’s affidavit and its attached exhibits to the extent that Howell’s affidavit did not demonstrate any proof of depositing in the mail the purported notice of foreclosure to the Cornishes.  According to the Cornishes, the United States Postal Service had no record of these purported notices’ being deposited in the mail system.  Also according to the Cornishes, the notices in Howell’s exhibits C and D falsely stated that Wells Fargo was the mortgagee of the Cornishes’ deed of trust, and such notice to accelerate the maturity of the debt by a noncontractual entity such as Wells Fargo was void and insufficient even if the Banks had proof that they deposited the same in the U.S. mail for delivery to the Cornishes.  They alleged that nowhere in the record was it established that Wells Fargo had been the deed holder by lien, judgment, or conveyance of interest in the real property, and that no record existed in the Tarrant County Clerk’s office that ever transferred title to the property to Wells Fargo, giving right to give legal notices and accelerate the maturity of the Cornishes’ deed of trust.

On October 27, 2006, prior to the summary judgment hearing, the Banks served and filed a document entitled “Motion to Strike Response Served October 26,” in order to strike the Cornishes’ second response as untimely filed. Following a summary judgment hearing, the trial judge faxed his decision to counsel in a document, stating simply, “motion to strike late filing and M/S/J are both granted.”  The final judgment, signed on November 7, 2006, granted the motion for summary judgment, dismissed the Cornishes’ case, and also stated that it was

ORDERED ADJUDGED AND DECREED that Defendants’ motion to strike the document filed in this court entitled Plaintiff’s Response to Defendant’s Reply to Response to Motion for Summary Judgment is granted and that document is hereby struck from the pleadings in this cause.

This appeal followed.

III.  Standard of Review

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004); 
see
 
Tex. R. Civ. P.
 166a(b), (c).  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  
IHS Cedars Treatment Ctr.
, 143 S.W.3d at 798. 

IV.  Inadequate Briefing

Rule 38.1(h) of the Texas Rules of Appellate Procedure reads as follows:

“The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.”  
Tex. R. App. P.
 38.1(h).  A point may be waived if inadequately briefed.  
Fredonia State Bank v. Gen. Am. Life Ins. Co.
, 881 S.W.2d 279, 284 (Tex. 1994).  

Several of Cornish’s points are waived for this reason, including point three: “Did the trial court err in not granting default judgment to Appellants after Appellees filed removal to a closed U.S. Bankruptcy case without judgment;” point four: “Did the trial court err in striking the affidavit of Appellant, Frank IV as a sham affidavit;” point five: “Did the trial court err in striking the affidavit of Appellant, Robin Cornish as a sham affidavit;” point seven: “Did the trial court err in allowing supplemental pleadings to Appellees’ summary judgment Motion outside of the 21 days notice period;” and point nine: “Did the trial court err in striking the appellants response to defendant’s reply to response to motion for summary judgment.”  Points three, four, five, seven, and nine are overruled as waived.

V.  Motion to Strike

The Cornishes assert in points six and eight that the trial court erred by allowing the pleadings and the affidavit of Eugene Zemp DuBose to be used as summary judgment evidence and by failing to strike the affidavit because it was unauthenticated and contained hearsay.  

We first note that there is no citation to any place in the record that pleadings were used as summary judgment evidence by the trial court.  Furthermore, the part objecting to an affidavit must identify the specific statements in the affidavit that are objectionable and state why they are objectionable.  
See, e.g., Haynes v. Haynes
, 178 S.W.3d 350, 355 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  An entire affidavit cannot be excluded if only part of it is inadmissible.  
See, e.g., Spradlin v. State
, 100 S.W.3d 372, 381 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  To consider a complaint about summary judgment evidence that was not presented and reviewed in the trial court, the objection must be one of substance, not form.  
Tex. R. Civ. P. 
166a(f); 
Dailey v. Albertson’s, Inc.
, 83 S.W.3d 222, 226 (Tex. App.—El Paso 2002, no pet.).  An objection that a document contains hearsay is a defect of form.  
St. Paul Ins. Co. v. Mefford
, 994 S.W.2d 715, 721 (Tex. App.—Dallas 1999, pet. denied) (hearsay objection).  Further, an objection that documents are unauthenticated is also an objection to the form of the evidence.  
See Giese v. NCNB Tex. Forney Banking Ctr.
, 881 S.W.2d 776, 782 (Tex. App.—Dallas 1994, no writ).  Absent objections in the trial court, the Cornishes’ objections on appeal to these defects in the form of evidence are waived.  
See id.

An examination of the record does not reveal that the Cornishes objected to the pleadings or the affidavit or moved to strike, so the arguments in these points, not having been made to the trial court, cannot be first presented on appeal.  
See
 
Tex. R. App. P.
 33.1(a);
 
Bushell v. Dean
, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g).  
Points six and eight are overruled as waived.

VI.  Notices

In regard to points one and two, the Cornishes argue that the Banks’ motion for summary judgment should not have been granted because the notices purportedly sent to them regarding their default were inadequate and improper.

The only discernable argument made in this regard is that the notices failed to comply with Texas Property Code section 51.002(d), in particular that portion reading that the mortgage servicer of a debt shall serve a debtor in default “under a deed of trust or other contract lien on real property used as the debtor’s residence with written notice by certified mail,” and section (e), which reads, 

[S]ervice of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor’s last known address.  The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

Tex. Prop. Code Ann.
 § 51.002(e) (Vernon 2007).

The Cornishes’ two-page response to the Banks’ motion for summary judgment attaches no summary judgment evidence, and the trial court struck the Cornishes’ response to the Banks’ reply, so the only evidence to consider is that evidence attached to the Banks’ motion for summary judgment.  That evidence confirms that the notice of default and intent to accelerate were sent by certified mail to the Cornishes at 305 Sheffield Drive on November 28, 2003, and that on February 4, 2004, similar letters were sent to the Cornishes informing them of the foreclosure of their home to take place on March 2, 2004, including the notice of substitute trustee’s sale.  Interestingly, at his deposition, Mr. Cornish could not at that time, months after the foreclosure, explain his complaint regarding the notice issue; and, in fact, Mr. Cornish was present at the foreclosure sale.  Mr. Cornish’s lawyer, in the days prior to the foreclosure itself, offered a payout of the arrearage, of which amount the Cornishes were aware as of August 1, 2003, when the bankruptcy court entered an order of conditional stay and set out an arrearage of $35,055.36 in an agreed order.  On October 17, 2003, the Cornishes were given notice of the delinquency and the failure to address the arrearage.  On November 3, 2003, the Banks filed a certificate of default indicating that the stay had been lifted and terminated, which was served on the Cornishes and on the bankruptcy counsel.

Having determined that the summary judgment evidence shows that the Banks gave, viewed in the light most favorable to the Cornishes, adequate notice to the Cornishes, we overrule points one and two.

VII. Texas Rule of Civil Procedure 735 

The Cornishes also assert, although not under any particular point, breach of contract when the Banks allegedly failed to comply with Rule 735, which reads,

A party seeking to foreclose a lien created under 
Tex. Const.
 art. XVI § 50(a)(6), for a 
home equity loan
, or 
Tex. Const.
 art. XVI, § 50(a)(7), for a 
reverse mortgage
, that is to be foreclosed on grounds other than 
Tex. Const.
 art. XVI, §§ 50(k)(6)(A) or (B), may file:  (1) a suit seeking judicial foreclosure;  (2) a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under the security instrument and 
Tex. Prop. Code
 § 51.002;  or (3) an application under Rule 736 for an order allowing foreclosure. 

Tex. R. Civ. P.
 735 (emphasis supplied).  However, the type of financing at issue here was a purchase money loan, not a home equity loan or a reverse mortgage.  Thus, it is irrelevant whether the foreclosure procedures for a home equity loan or reverse mortgage were followed, and we hold this line of argument to be inapplicable under these facts.    

VIII.  Appellate Sanctions

In a cross-point, the Banks argue that the Cornishes’ appeal is frivolous, and they seek damages under appellate rule 45.  
See 
Tex. R. App. P.
 45.  We must exercise our discretion to impose rule 45 damages with prudence, caution, and only after careful consideration.  
Duran v. Resdoor Co.
, 977 S.W.2d 690, 693 (Tex. App.—Fort Worth 1998, pet. denied); 
Deaner v. Marchese
, No. 02-03-00029-CV, 2004 WL 177480, at *1 (Tex. App.—Fort Worth Jan. 29, 2004, no pet.) (mem. op.).  Rule 45 damages will not be imposed unless the record, viewed from the appellant’s point of view at the time the appeal was taken, clearly shows that the appeal was brought only for delay and that the appellant had no reasonable expectation of reversal.  
Smith v. Brown
, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); 
Duran
, 977 S.W.2d at 693; 
Bledsoe v. Kuczek
, No. 02-02-00255-CV, 2003 WL 21476204, at *4 (Tex. App.—Fort Worth June 26, 2003, no pet.) (mem. op.).
  
After review, we decline to impose the sanction requested by the Banks and overrule their cross-point.

IX.  Conclusion

Having disposed of all nine of the Cornishes’ points, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and MCCOY, JJ.

DELIVERED: August 9, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.