Opinion issued August 25, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00481-CV

———————————

Ezekiel Wande, Appellant

V.

Pharia,
L.L.C., Appellee



 



 

On Appeal from the County Court At Law No. 2

Fort Bend County, Texas



Trial Court Case No. 09-CCV-039967

 



 

MEMORANDUM OPINION

          Appellant,
Ezekiel Wande, challenges the trial court’s rendition of summary judgment in
favor of appellee, Pharia, L.L.C., in its suit against Wande for breach of
contract relating to a credit card debt. 
In six issues, Wande contends that the trial court erred in granting
summary judgment in favor of Pharia, overruling his objections to Pharia’s
summary-judgment evidence, and not granting his no-evidence motion for
summary-judgment.  

          We
reverse and remand.

Background

          In
its original petition, Pharia alleged that it, or its predecessors in interest,
and Wande had entered into a binding loan contract, which involved the
application for and issuance of loans to Wande pursuant to a credit card issued
by Citibank South Dakota, N.A. (“Citibank”), with an account number ending in
the numbers “6841.”  Pharia sought damages
of $24,418,82 for Wande’s failure to make his credit card payments.  Wande answered, generally denying Pharia’s
claims and asserting that he had “never had an open account with [Pharia] or
[Pharia’s] predecessor.”  Wande also
asserted counterclaims against Pharia for violations of federal and state
statutes concerning debt collection practices.

          Pharia
then moved for summary judgment, asserting that it is the “current owner of the
account” after having purchased it from “Unifund”; Wande had “purchased goods
and services by borrowing money” on the account and “breached the agreement for
the extension of credit when [he] failed to make payments on the account when
due”; Pharia had sent Wande a demand letter “requesting payment on the account
on April 1, 2009”; and Wande “refused to pay” and “breached the agreement to
pay this indebtedness,” which was “past due and fully payable.”  Pharia further asserted that its
summary-judgment evidence established that Wande had accepted and used the
credit card, the issuance of the credit card to Wande constituted an “offer,”
Wande’s use of the credit card constituted an “acceptance,” and Wande owed it a
total of $24,818.82.

          Pharia
attached to its summary-judgment motion the business records affidavit of Holly
Chaffin, a custodian of records for Pharia. 
Attached to Chaffin’s affidavit were 100 pages of documents, including
the affidavit of Kathryn Halpin, an authorized representative of Unifund CCR
Partners (“UCCR”); a “Bill of Sale, Assignment and Assumption Agreement”
between Citibank and Unifund Portfolio A, L.L.C. (“UPA”); an “Authorization for
Assignment of Accounts” between UPA and UCCR; a “Bill of Sale” between UCCR and
Pharia; a photocopy of a 2001 Citibank Card Agreement; and monthly statements
reflecting the charges incurred on the account. 


          Wande
filed with the trial court written objections and a motion to strike the
affidavits of Chaffin and Halpin, the 2001 Citibank Card Agreement, and the
bill of sale.  He subsequently filed his
no-evidence motion for summary judgment, asserting that Pharia had presented no
evidence of the following elements of a breach of contract claim: (1) the
existence of a valid contract, (2) delivery of the alleged contract by Pharia
to Wande, (3) performance or tendered performance of the contract by Pharia or
its assignor, (4) breach of any contract by Wande, and (5) damages.  Wande also moved for summary judgment,
asserting that he was entitled to judgment as a matter of law on his counterclaims.  Wande attached to this motion his affidavit,
in which he testified, in pertinent part, as follows:

I
have personal knowledge of all facts because the Citibank account which was the
account on which this lawsuit is based was my account.

 

Citibank
opened a credit card charge account for me, Account Number ending in 6841.  This account was used exclusively for
personal, family and/or household purposes. 
Citibank never sold any goods or services to me. 

 

Citibank
sent periodic statements to me, reflecting extensions of credit.  These statements that I received from
Citibank included finance charges on every statement, and occasionally there
would be late fees.  

 

I
have never had any contract or account with Pharia L.L.C.  Pharia L.L.C. has never loaned money to me or
extended credit to me.  I have never
purchased anything from Pharia L.L.C. or from Citibank.  

 

          To
its response to Wande’s summary-judgment motions, Pharia attached the affidavit
of Halpin, the “Authorization for Assignment of Accounts” from UPA to UCCR, the
Bill of Sale between Citibank and UPA, and the Bill of Sale from UCCR to
Pharia.  

Wande then filed written objections
and a motion to strike the evidence that Pharia had attached to its
response.  He objected to Halpin’s
affidavit testimony on the grounds that it constituted hearsay and parol
evidence, was not the “best evidence,” and it was conclusory.  Wande objected to the “Authorization for
Assignment of Accounts” from UPA to UCCR on the ground that it “is not an assignment[,]
it only references assignments to be made in the future.”  After it struck much of the evidence about
which Wande had complained, the trial court granted Pharia’s summary-judgment
motion.    

Standard of Review 

To prevail
on a summary-judgment motion, a movant has the burden of proving that it is
entitled to judgment as a matter of law and there is no genuine issue of
material fact.  Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995).
 When a plaintiff moves for summary
judgment on its claim, it must establish its right to summary judgment by
conclusively proving all the elements of its cause of action as a matter of
law.  Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Anglo-Dutch Petroleum Int’l, Inc.
v. Haskell, 193
S.W.3d 87, 95 (Tex. App.—Houston
[1st Dist.] 2006, pet. denied).  When
deciding whether there is a disputed, material fact issue precluding summary
judgment, evidence favorable to the non-movant will be taken as true.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985).
 Every reasonable inference must be
indulged in favor of the non-movant and any doubts must be resolved in its
favor.  Id. at 549.

When a
party moves for summary judgment on the ground that there is no evidence of one
or more essential elements of the non-movant’s claims, the movant must
specifically state the elements of the non-movant’s claims as to which there is
no evidence.  Tex. R. Civ. P. 166a(i); Spradlin v. State, 100 S.W.3d 372, 377 (Tex. App.—Houston
[1st Dist.] 2002, no pet.).  The burden
then shifts to the non-movant to produce evidence that raises a fact issue on
the challenged elements.  Spradlin, 100 S.W.3d at 377.  “The court must grant the motion unless the
respondent produces summary judgment evidence raising a genuine issue of
material fact.”  Tex. R. Civ. P. 166a(i). 

When, as here, both parties move for summary judgment, the
appealing party may challenge the denial of its own motion as well as the
judgment in favor of the prevailing party.  CU Lloyd’s v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998); Spradlin
v. State, 100 S.W.3d 372, 377 (Tex. App.—Houston [1st Dist.] 2002, no pet.).
 Each party must carry its own burden,
however, both as movant and in response to the other party’s motion, as
non-movant.  Id.; James v.
Hitchcock Indep. Sch. Dist.,
742 S.W.2d 701, 703 (Tex. App.—Houston [1st Dist.] 1987, writ denied).

Breach of Contract

In his third and fourth issues,
Wande argues that the trial court erred in granting summary judgment for Pharia
“because there is no evidence or insufficient evidence that there was any
agreement between Wande and the original creditor on any terms and conditions
of a contract” and there is no evidence “proving how” Pharia’s “damages were
calculated and how Pharia arrived at the debt balance” awarded by the trial
court.  Wande asserts that “it is clear
that the alleged” cardholder agreement dated “2001” is not the cardholder
agreement on which Citibank and Wande had agreed when his account was opened in
January, 2002.  Wande thus concludes that
the cardholder “agreement dated 2002[[1]] must
[contain] modifications” of the original contract.  He asserts that “we do not know the terms of
the original contract and whether it allowed for unilateral modification” and
Pharia did not prove that the original contract allowed for unilateral modifications.

Parties form a binding contract
when the following elements are present: (1) an offer, (2) an acceptance in
strict compliance with the terms of the offer, (3) a meeting of the minds, (4)
each party’s mutual consent to the terms, and (5) execution and delivery of the
contract with the intent that it be mutual and binding.  Prime
Products, Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002,
pet. denied).  To be enforceable, a
contract must be sufficiently certain to enable a court to determine the rights
and responsibilities of the parties.  T.O. Stanley Boot Co. v. Bank of El Paso,
847 S.W.2d 218, 221 (Tex. 1992).  To be
entitled to summary judgment on its breach of contract claim, Pharia was
required to prove, as a matter of law, the following essential elements: (1)
the existence of a valid contract; (2) performance or tendered performance by
the plaintiff; (3) breach of the contract by Wande; and (4) damages sustained
as a result of the breach.  See Winchek
v. Am. Ex. Travel Related Servs. Co., 232 S.W.3d 197, 202 (Tex. App.—Houston
[1st Dist.] 2007, no pet.).

Pharia offered the following
evidence to prove the existence of an enforceable contract: (1) the affidavits
of Chaffin and Halpin, much of which were struck by the trial court; (2) a
“Bill of Sale, Assignment and Assumption Agreement” between Citibank and UPA;
(3) an “Authorization for Assignment of Accounts From [UPA] to [UCCR]”; (4) a
Bill of Sale from UCCR to Pharia; (5) billing statements mailed to Wande
between July 2004 and July 2006 reflecting widely varying interest rates; and
(6) a 2001 “Citibank Card Agreement.”

In Williams v. Unifund CCR Partners, this Court held that a creditor
failed to establish the existence of a valid contract because the creditor did
not produce the actual agreement or any other document that established the
agreed upon terms, including the applicable interest rate or method for
determining the applicability and amount of finance charges.  264 S.W.3d 231, 236 (Tex.
App.—Houston
[1st Dist.] 2008, no pet.).  This Court
noted that the interest rate and other information reflected in the statements
were inconsistent and there was no indication of an agreement reached as to
interest.  Id.  We further noted that there was no evidence
on how the creditor calculated the interest rates and finance charges that
allegedly increased the debtor’s account balance from the $7,895.00 that he
owed as reflected by a June 2002 statement and the $14,153.90 the creditor
claimed in its lawsuit.  Id.  In sum, we determined that although the
creditor’s summary judgment evidence might have shown that “the parties had
reached an agreement of some kind,” the evidence was “not sufficient to
establish the terms of a valid contract as a matter of law” and did not support
the trial court’s award of over of $14,153.90 plus interest.  Id.

In contrast, in Winchek, we held that a creditor met its
summary judgment burden to establish both the existence of a contract and the
outstanding amounts owed by the debtor.  232
S.W.3d at 204–05.  We noted that the
creditor had introduced into evidence a copy of its “Personal Card Member
Agreement,” its billing statements, and an affidavit from its manager of credit
operations.  Id. at 202–03.  We further
noted that the agreement and summary-judgment evidence reflected the late fees,
minimum payments under a deferred billing feature, and the method for
calculating finance charges.  Id. at 203, 205.  We also emphasized that the agreement and
monthly statements “provided detailed explanations” of the “cost of credit” and
“the computation of the interest rate as applied to her account.”  Id.
at 205.

In the instant case, Pharia
presented the 2001 cardholder agreement, which provided that it was “binding on
you unless you cancel your account within 30 days after receiving the card and
you have not used or authorized use of your account.”  The agreement also stated: 

This Agreement and the card
carrier are your Citibank Card Agreement. 
The card carrier contains important account information including the
annual percentage rate and the amount of any membership fee.  Please read and keep both the card carrier
and this Agreement for your records. 
This Agreement is binding on you unless you cancel your account within
30 days after receiving the card and you have not used or authorized use of
your account.

 

The agreement also noted, “We can change this
Agreement including all fees and the annual percentage rate at any time.”  And it defined “Annual Percentage Rate for
Purchases” as follows:

Your annual percentage rate
for purchases and the corresponding daily periodic rate appear on the card
carrier.  A daily periodic rate is the
applicable percentage rate divided by 365. 
Whether or not the annual percentage rate for purchases is based on the
US Prime Rate plus a margin is indicated on the card carrier.  

 

          Here,
as in Williams, the evidence may be
sufficient to show that “the parties had reached an agreement of some
kind.”  See Williams, 264 S.W.3d at 236. 
But, important portions of the agreement that Pharia presented into
evidence are illegible, including a section entitled “Finance Charges.”  The summary judgment record also does not
include the “card carrier” document to which the agreement expressly
refers.  Moreover, there is no affidavit
testimony explaining if terms of the agreement supported the claimed
outstanding balance, nor is there any affidavit testimony or evidence setting
forth the calculations used by Pharia to arrive at its claimed outstanding
balance, which differs significantly from the maximum outstanding amounts
reflected in the monthly statements.[2]  Pharia does not direct us to any documents in
the record supporting the entire claimed amounts.  

In sum, although there is some
evidence of an agreement and that Wande may owe outstanding amounts under this
agreement, Pharia did not present evidence conclusively establishing the
amounts that it claimed it was owed and that the trial court awarded in its
summary judgment.  See Nice v. Dodeka, L.L.C.,
No. 09-10-00014-CV, 2010 WL 4514174, at *6 (Tex. App.—Beaumont Nov. 10, 2010,
no pet.) (mem. op.) (reversing summary judgment entered in favor of creditor
because entire amount of credit card balance awarded by trial court was not
supported by summary judgment evidence, and remanding for further proceedings). 
Accordingly, we hold that the trial court erred in granting
summary-judgment in favor of Pharia.

          We
sustain Wande’s third and fourth issues.[3]  

No-Evidence Summary Judgment

In his sixth issue, Wande argues
that the trial court erred in not granting his no-evidence motion for
summary-judgment because Pharia failed to present evidence that it owns Wande’s
account, of the existence of an enforceable contract, and how it “calculated
its damages.”  

Ownership of Wande’s Account

Wande argues that there is no
evidence that Pharia owns the cardholder account because the trial court, in
large part, struck the affidavit testimony of Chafin and Halpin and there are
gaps in the chain of the title of the cardholder account.  He asserts that the “Authorization for
Assignment” from UPA to UCCR is not an assignment and there is no exhibit
identifying any account assigned by UCCR to Pharia.  

We note that the trial court did
not attempt to strike Chafin’s affidavit testimony in its entirety, and it did
not strike the exhibits attached to her business record affidavit.  And the Authorization for Assignment expressly
identifies itself as an assignment: “THIS ASSIGNMENT is effective as of July 6,
2001, between UNIFUND PORTFOLIO A, LLC . . . and UNIFUND CCR
PARTNERS[.]”  The Authorization for
an Assignment is accompanied by a line item listing Wande’s cardholder account.  Wande argues that this is not an assignment because
it only “references assignments to be made in the future.”  However, this Court has recently addressed
this exact argument and held such an “Authorization for Assignment” to be
sufficient to establish UPA’s intent to assign Wande’s account to UCCR.  See
Wood v. Pharia L.L.C., No. 01-10-00579-CV, 2010 WL 5060621, at *6 (Tex.
App.—Houston
[1st Dist.] Dec. 6, 2010, no pet.) (mem. op.). 


In Wood,
the “Authorization for Assignment” was identical to the one at issue in the
instant case, and we concluded that “taking the contract as a whole, the title
of the instrument, the above-quoted language, and the express inclusion of Wood’s
account all indicate that the intent of the Authorization for Assignment was to
assign Wood’s account from [UPA] to [UCCR].”  Id.  Thus, the Authorization for Assignment in this
case constitutes evidence that UPA assigned Wande’s account to UCCR.  See id.


In regard to his assertion that
there is a gap in the chain of title of the cardholder account, Wande complains
that there is no exhibit identifying any account assigned by UCCR to
Pharia.  He notes that he objected to the
Bill of Sale from UCCR to Pharia because “nowhere is Wande or Wande’s alleged
account referenced in the alleged Bill of Sale.”  A review of the record reveals that the Bill
of Sale does not reference Wande’s account. 
However, in its response to Wande’s no-evidence summary-judgment motion,
Pharia included the Bill of Sale with an attachment indicating that Wande’s
account was among those transferred to Pharia. 
When parties file cross motions for summary judgment, we review the
evidence submitted in all of the motions. 
Comm’rs Court of Titus Cnty v. Agan,
940 S.W.2d 77, 81 (Tex. 1997).  Thus,
Pharia did present some evidence that Wande’s account was among the accounts
transferred to Pharia.  Accordingly, we
conclude that Pharia did present some evidence to establish its ownership of
Wande’s account.  

Existence of a Contract

Wande next asserts that Pharia
failed to present evidence of the existence of a valid, enforceable
contract.  Pharia attached to its
response to Wande’s summary-judgment motion, the 2001 cardholder agreement, and
copies of Wande’s monthly credit card statements.  The Agreement provided, in pertinent part,
“This Agreement is binding on you unless you cancel your account within 30 days
after receiving the card and you have not used or authorized use of your
account.”  The Agreement also stated that
the card carrier includes “important account information including the annual
percentage rate and the amount of any membership fee.”  Furthermore, the record includes copies of
Wande’s monthly statements, reflecting that a specific card and account number
were issued to Wande and he used the card to charge various goods and services
each month.  Although Wande disputes
whether or not this 2001 cardholder agreement is the agreement in effect at the
time that he opened the account, we conclude that Pharia presented some
evidence of the existence of a valid contract. 


Damages

Finally, Wande asserts that Pharia
“presented no evidence on how it calculated its damages.”  However, as part of its summary-judgment
evidence, Pharia included copies of Wande’s monthly credit card statements
which reflect the amounts owed.  We conclude
that, although the summary-judgment evidence does not support the entire amount
awarded by the trial court, the monthly credit card statements and other
evidence reflecting outstanding amounts owed by Wande on his account constitute
some evidence of damages.  

Accordingly, we hold that the trial
court did not err in denying Wande’s no-evidence motion for summary judgment.

 

 

 

 

 

 

Conclusion

          We
reverse the trial court’s judgment and remand the cause for further
proceedings.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Higley, and Brown.

 











[1]           There is no “2002” agreement in the
record, and we construe Wande’s statement as a reference to the 2001 agreement
that he is disputing.  





[2]
          For example, although Pharia
presented some evidence of how the interest rates were calculated based upon
the cardholder agreement, and although Pharia included Wande’s monthly billing
statements reflecting an outstanding balance of $13,220.41 in July 2006, Pharia
did not present evidence, and certainly not conclusive evidence, supporting the
assessment of finance charges or the increase in the balance from $13,220.41 to
$24,418.82. 





[3]
          Having sustained Wande’s third and fourth issues, we need not directly address
his first and fifth issues in which he argues that the trial court erred in granting summary judgment for Pharia because
there is no evidence or insufficient evidence that Pharia owns Wande’s
account.  We also need not address his
second issue, in which he argues that the trial court erred in overruling his
“objections to the alleged cardmember agreements profferred” by Pharia.