Opinion issued July 8, 2010

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-01002-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



melanie kershner, Appellant

 

V.

 

jimmy dyer and brenda dyer 

d/b/a bj enterprises, Appellees

 

 



On Appeal from County Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 921970

 

 



MEMORANDUM OPINION

          Appellant,
Melanie Kershner, challenges the trial court’s rendition of summary judgment in
favor of appellees, Jimmy Dyer and Brenda Dyer doing business as BJ Enterprises
(“BJ”) in Kershner’s premises liability suit against BJ.  In her sole issue, Kershner contends that genuine
issues of material fact exist on each element of her claim and BJ, as an independent
contractor, is personally liable for her injuries.

We affirm.

Background 

The Metropolitan
Transit Authority (“Metro”) owns and occupies the Monroe Park and Ride Lot (the
“Lot”), and it contracted with BJ to mow the grounds of the Lot.  When Kershner went onto the Lot to buy a
transit pass, she fell and injured herself by stepping into a “man-made hole  . . . that was overgrown with grass” and created
by a missing sprinkler valve cover.  

In her
original petition, Kershner alleged that BJ “had such control over the [Lot]”
that it owed her a duty, which it breached by “negligently permit[ting] the
hole to become overgrown and the cover to be broken or lost, negligently or
willfully allow[ing] such condition to continue, and negligently or willfully
fail[ing] to warn [her] of the condition of the ground.”  Kershner further alleged that BJ “knew or
should have known” about the hole and it posed a risk of injury to her.  Kershner also alleged that the hole “had
continued for such period that had [BJ] exercised ordinary care in the
maintenance of the grounds, it would have been noticed and corrected.”

BJ
answered, generally denying Kershner’s allegations, and subsequently moved for
summary judgment.  BJ asserted that there
is no evidence that BJ “owed any duty” to Kershner, “had knowledge either
actual or constructive” of the hole, or owned or occupied the premises.  BJ argued that it is entitled to judgment as
a matter of law because Orlando Estrada, a Metro employee, testified that “he
was . . . responsible for the inspection of Metro properties
including the [Lot]” and he “would inspect [the Lot] looking for deficiencies
including missing water valve covers.”  BJ
further argued that because Metro took “subsequent remedial measures” to repair
the valve cover, Metro was “in control” of the Lot and the valve cover at the time
of the incident.

In her
response to BJ’s summary judgment motion, Kershner asserted that her injuries
were caused by falling into a hole created by a missing sprinkler valve cover
that BJ “knew or, in the exercise of ordinary care, should have known” was
missing and BJ “failed to use ordinary care to reduce or eliminate [the]
unreasonable risk of harm.”  She also
asserted that BJ “had full control of the [Lot] via contract with [Metro]” and
the “maintenance and upkeep of the [Lot] which [BJ was] obligated to keep safe
under [the] contract was neglected for sometime thereby creating an
unreasonable risk of harm to [Kershner].” 
Kershner further asserted that BJ would have seen the missing valve
cover “during the process of cutting the grass where the grounds are completely
being covered and inspected.”  

Standard of Review

To prevail on a summary judgment
motion, a movant has the burden of proving that he is entitled to judgment as a
matter of law and that there is no genuine issue of material fact.  Tex. R.
Civ. P. 166a(c); Cathey v. Booth,
900 S.W.2d 339, 341 (Tex. 1995).  When a
defendant moves for summary judgment, it must either (1) disprove at least one
element of the plaintiff’s cause of action or (2) plead and conclusively
establish each essential element of its affirmative defense, thereby defeating
the plaintiff’s cause of action.  Cathey, 900 S.W.2d at 341.  

When a
party moves for summary judgment on the ground that there is no evidence of one
or more essential elements of the non-movant’s claims, the movant must
specifically state the elements of the non-movant’s claims as to which there is
no evidence.    Tex. R. Civ. P. 166a(i); Spradlin v. State, 100 S.W.3d 372, 377
(Tex. App.—Houston [1st Dist.] 2002, no pet.).  The burden then shifts to the non-movant to
produce evidence that raises a fact issue on the challenged elements.  Spradlin,
100 S.W.3d at 377.  “The court must grant
the motion unless the respondent produces summary judgment evidence raising a
genuine issue of material fact.”  Tex. R. Civ. P. 166a(i).  

 

Summary Judgment

In her sole issue, Kershner argues
that the trial court erred in granting BJ’s summary judgment motion because
there are genuine issues of material fact as to whether BJ had actual or
constructive knowledge of the missing sprinkler valve cover, and, as an
independent mowing contractor, had a duty, to act reasonably and exercise
reasonable care to reduce or eliminate the risk to Kershner created by the
missing sprinkler valve cover.

To establish a premises liability
claim in which it is alleged that a dangerous condition is known to or
discoverable by a possessor of premises, a plaintiff must prove that (1) the
possessor had actual or constructive knowledge of some condition on the
premises, (2) that posed an unreasonable risk of harm, (3) that the possessor
failed to exercise reasonable care to reduce or eliminate the risk, and (4) the
possessor’s failure to use such care proximately caused the plaintiff’s
injuries.  Motel 6 G.P., Inc. v. Lopez, 929 S.W.2d 1, 3 (Tex. 1996); Restatement (Second) of Torts § 343 (1977).  Ordinarily, it is the owner or occupier as
the possessor of premises that has this duty to use reasonable care to keep the
premises safe for invitees.  Clayton W. Williams, Jr., Inc. v. Olivo,
952 S.W.2d 523, 527 (Tex. 1997).  Liability
may, however, extend to one, such as an independent contractor, who is not the owner
or occupier, but is in control of the premises. 
City of Denton v. Page, 701
S.W.2d 831, 835 (Tex. 1986).  Thus,
liability depends on control of the premises, which creates the duty on the
controller to use reasonable care to make the premises safe for the use of
invitees.  Id.; Lefmark Mgmt. Co. v. Old,
946 S.W.2d 52, 53 (Tex. 1997).  Control
is defined as “power or authority to guide or manage.”  Bay,
Inc. v. Ramos, 139 S.W.3d 322, 326 (Tex. App.—San Antonio 2004, no pet.).  For a contractor to be liable in negligence,
“its supervisory control must relate to the condition . . . that caused the
injury.”  Olivo, 952 S.W.2d at 528.

Kershner asserts there is a fact
issue as to whether BJ, as an independent contractor in “full control” of the
Lot and responsible for the “maintenance and upkeep” of the Lot, owed her a
duty to exercise reasonable care in discovering, warning invitees about, and
repairing the missing sprinkler valve cover. 
BJ asserts that there is no evidence that it controlled the Lot and the
evidence conclusively showed that Metro controlled the Lot.  

Kershner attached to her response to BJ’s
summary judgment motion her affidavit in which she testified that BJ was
Metro’s “independent contractor[] . . . hired to cut the grass” on
the Lot.[1]  She, however, presented no evidence
establishing that BJ’s responsibility went beyond mowing the grounds to “maintenance
and upkeep” of the Lot.  In fact, Estrada
did not testify that the mowing contractor had responsibility for “maintenance
and upkeep” of the Lot, only that he “would suspect” the mowing contractor
would have seen the missing sprinkler valve cover.  BJ attached to its summary judgment motion the
deposition of Estrada who testified that he was responsible for “maintenance and
cleaning” of the Lot.  Once a week,
Estrada would do a slow, “drive-by” visual inspection of the grounds of the Lot
looking for “deficiencies—damages, graffiti, vandalism, things of that
nature.”  He noted that the sprinkler
valve at issue had a “plastic cover” with a “top.”  Estrada explained that when Metro needed to
repair such a valve, the “top is able to be removed and then [Estrada’s team
was] able to take care of the repairs or maintenance, and then cover it back
up.”  

Estrada had
not seen the sprinkler valve cover in question prior to Kershner’s fall, and he
admitted that during his drive-by, visual inspection of the Lot, he “probably
would not have noticed” the missing valve cover.  Four days prior to Kershner’s fall, Estrada
had inspected the Lot, but, in his report, he did not identify any deficiencies.  Thus, he did not submit a work order for the
valve cover, and he did not orally dispatch a maintenance person to repair the
valve cover.  Estrada had also not been
notified by anyone else within Metro about a missing sprinkler valve cover.

After
Kershner fell, Estrada was notified about the condition, saw the valve with “no
cover” and “partially covered with grass,” dispatched a maintenance person to
secure the area, and notified Metro’s plumbing department.  The plumbing department dispatched a plumber
to repair the valve cover.

Estrada
explained that “maintenance and cleaning” did not involve “mowing,” which is
“contracted out.”  He further explained
that he had “responsibility to inspect the entire property” and Metro was
“responsible for maintaining” the sprinkler valve covers.  Estrada opined that he “would suspect” that
anyone mowing would observe a missing sprinkler valve cover and report it to
the Metro “supervisor/inspector” who “oversee[s] the contractors.”  He further opined that because grass had
grown over the valve, the hole had been there “for a length of time.”

Kershner concedes that Metro is the
“owner or occupier” of the Lot.  This
status, along with Estrada’s testimony that he was responsible for “maintenance
and cleaning” of the Lot, including identifying “deficiencies,” and the fact
that Metro dispatched its own maintenance and plumbing personnel to repair the
sprinkler valve cover, established that Metro controlled the Lot.  See
Lefmark Mgmt. Co., 946 S.W.2d at 53
(ordinarily owner or person otherwise in control of premises owes business
invitees duty of care).  

We conclude that the evidence conclusively
established that Metro controlled the Lot, and there is no genuine issue of
material fact that BJ, as Metro’s independent mowing contractor, did not
control the maintenance of the Lot.  Accordingly,
we hold that the trial court did not err in granting BJ’s summary judgment
motion.

We overrule Kershner’s sole issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

                                                                             Terry
Jennings

                                                                             Justice

 

Panel consists of Justices Jennings, Alcala,
and Massengale.











[1]           BJ
objected to Kershner’s affidavit testimony as “speculative,” which we interpret
as not based on her personal knowledge. 
An objection that an affidavit is not based on personal knowledge is an
objection to form.  Rizkallah v. Conner, 952 S.W.2d 580, 585 (Tex. App.—Houston [1st
Dist.] 1997, no writ) (objection that affidavit not based on personal knowledge
is defect in form and not in substance). 
By failing to obtain a written ruling on its objection that Kershner had
no personal knowledge that BJ was Metro’s mowing contractor for the Lot, BJ has
waived this objection.  See Clarendon Nat’l Ins. Co. v. Thompson,
199 S.W.3d 482, 490 n.7 (Tex. App.—Houston [1st Dist] 2006, no pet.) (objection
to form of summary judgment affidavit requires written ruling for appellate
review, while objection to conclusory statement is objection to substance that
may be raised for first time on appeal).