**Opinion issued February 24, 2022.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-21-00073-CV**

————————————

**UNION PACIFIC RAILROAD COMPANY, Appellant**

**V.**

**BETTY CHENIER, ET AL., Appellees**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-10063**

---

## O P I N I O N

Betty Chenier and a dozen other plaintiffs sued Union Pacific Railroad Company for various torts based on or in response to Union Pacific's failure to act. They alleged that Union Pacific failed to adequately warn them about cancer-causing soil and groundwater contaminants from Union Pacific's nearby facilities, causing

them property and personal injury damages. Union Pacific sought dismissal of certain claims under the current version of the Texas Citizens Participation Act ("TCPA").[1] The trial court denied Union Pacific's TCPA motion to dismiss, concluding that the dispute failed to invoke TCPA protections. In this interlocutory appeal, Union Pacific challenges the trial court's denial of its TCPA motion.

Because we conclude that the district court did not err in denying Union Pacific's motion to dismiss plaintiffs' claims under the TCPA, we affirm.[2]

**Background**

In this TCPA appeal, the factual background rests on the plaintiffs' allegations and evidence.[3] In February 2020, 13 plaintiffs sued Union Pacific alleging claims for negligence, negligence per se, negligent misrepresentation, fraud, and nuisance. The plaintiffs allege that they are residents of the Fifth Ward and Kashmere Gardens

---

[1]     The Texas Legislature amended the TCPA in its most recent legislative session and the amendments are effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–12 (codified at TEX. CIV. PRAC. & REM. CODE §§ 27.001– .010). Because this suit was filed after the effective date of the amendments, all citations to the TCPA in this opinion refer to the amended statute.

[2]     Appellant, Union Pacific Railroad Company, filed a motion for rehearing of our September 2, 2021 opinion. We deny the motion for rehearing, withdraw our September 2, 2021 opinion and judgment, and issue this opinion and judgment in their stead. The disposition remains the same.

[3]     *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (TCPA actions are based on plaintiff's allegations, not defendant's admissions or denials).

neighborhoods in Houston. Union Pacific is a Delaware corporation authorized to do business in Texas.

Union Pacific and its predecessors maintained their plant operations for over 50 years at a facility in the residential neighborhoods of Kashmere Gardens and the Fifth Ward. Union Pacific first used this facility to treat wood railroad ties with creosote, a toxic chemical.[4] Union Pacific never removed the creosote waste from the Fifth Ward and Kashmere Gardens neighborhoods after it stopped using creosote because of safety concerns in the 1980s.

In 2014, Union Pacific contacted Fifth Ward and Kashmere Gardens property owners, presented them with restrictive covenants, and asked that they agree to not use their groundwater, reasoning that the "chemicals of concern were managed such that human exposure was prevented and that other groundwater resources were protected."

In April 2019, Union Pacific applied for a permit renewal with the Texas Commission on Environmental Quality (TCEQ).[5] The TCEQ issued a letter to Union

---

[4]    Creosote is a carcinogenic chemical that contains "arsenic and other volatile organic compounds, such as pentachlorophenol, napthalene, and tetrachlorodibenzo-p-dioxin, depending on the creosote makeup."

[5]    According to Union Pacific, the permit required it to "adhere to all applicable environmental laws and regulations and coordinate all investigations and cleanup activities with the TCEQ."

Pacific entitled "4th Technical Notice of Deficiency for Permit Renewal," noting eight deficiencies that subjected the company to a denial of the permit renewal.

Later, the TCEQ requested the Texas Department of Health and Human Services to conduct a cancer cluster survey of the Kashmere Gardens and Fifth Ward neighborhoods. The TCEQ representative explained that creosote and related compounds contaminated the soil and groundwater under more than 100 homes north of Union Pacific's facility. In May 2019, Union Pacific collected groundwater samples and sent them to the TCEQ for testing. The analysis revealed that the groundwater samples contained creosote contaminants, along with other chemicals that "were greater than the acceptable limit."

In August 2019, the TCEQ investigated the occurrence of six types of adult cancers within the Fifth Ward and Kashmere Gardens. The investigation revealed increased occurrences of various cancers. Per the investigation, the toxic chemicals contaminated the soil, air, and water in these neighborhoods and caused property and personal injury damages, including cancer, to the plaintiffs and others.

The essence of plaintiffs' claims is that Union Pacific was aware of the risks associated with the exposure to creosote and other toxic contaminants and it failed to disclose such risks to the plaintiffs, which caused property damage and personal injuries. The plaintiffs alleged that they sustained damages, including past and future

4

medical expenses, past and future physical impairment, past and future physical pain, and property damage. The plaintiffs sought over $50,000,000 in damages.

Union Pacific removed the case to federal court based on diversity jurisdiction. The plaintiffs moved for leave to amend their complaint and for remand and requested to add defendants who were Texas residents. The federal court granted the plaintiffs' motion to amend the complaint and remanded the case to state court.

On remand, Union Pacific moved to dismiss the plaintiffs' property-damage claims for negligence, negligence per se, negligent misrepresentation, and nuisance under the TCPA. It did not move to dismiss the plaintiffs' fraud claim or any claims for personal injury damages. *See* TEX. CIV. PRAC. & REM. CODE § 27.010(a)(3), (12) (exempting from dismissal under the TCPA legal actions seeking bodily-injury damages or based on common law fraud). Union Pacific asserted that the plaintiffs' property-damage claims were based on or in response to Union Pacific's exercise of its right of free speech and right to petition. First, Union Pacific claimed that the claims were based on its free-speech rights it exercised to induce plaintiffs to agree to restrictive covenants. Second, Union Pacific asserted that the plaintiffs' claims implicated its right to petition based on Union Pacific's communications to the plaintiffs during its TCEQ's permit renewal process.

The trial court denied Union Pacific's TCPA motion to dismiss. Union Pacific appealed, challenging the trial court's denial of its motion. *See* TEX. CIV. PRAC. &

REM. CODE § 51.014(a)(12) (authorizing interlocutory appeal of order denying motion to dismiss filed under TCPA Section 27.003).

## Dismissal of Claims under the TCPA

**A.     Standard of review**

We review de novo the denial of a TCPA motion to dismiss. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In deciding if dismissal of a legal action is warranted, we consider "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a). "The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Hersh*, 526 S.W.3d at 467. We review the pleadings and evidence in the light most favorable to the nonmovant. *Schimmel v. McGregor*, 438 S.W.3d 847, 855–56 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Whether the TCPA applies is an issue of statutory interpretation that we also review de novo. *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

**B.      Applicable law**

The TCPA "is a bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern." *Hall*, 579 S.W.3d at 376. The purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. It does so by allowing a defendant who claims that a plaintiff has "filed a meritless suit in response to the defendant's proper exercise of a constitutionally protected right to seek dismissal of the underlying action, attorneys' fees, and sanctions at an early stage in the litigation." *Dolcefino, LLC v. Cypress Creek EMS*, 540 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing TEX. CIV. PRAC. & REM. CODE § 27.003(a)). A party may move to dismiss a "legal action" that "is based on or is in response to [that] party's exercise of the right of free speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE § 27.003(a).

A TCPA movant starts the two-step process for the expedited dismissal of such legal actions. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). In the first step, the TCPA movant bears the initial burden of showing by a preponderance of evidence that the suit is based on or in response to its exercise of one of the three

7

First Amendment rights: the right of free speech, right to petition, or right of association. TEX. CIV. PRAC. & REM. CODE § 27.005(b)(1). If the TCPA movant meets this burden of establishing the applicability of the TCPA, then the second step applies and the burden shifts to nonmovant to establish "by clear and specific evidence a prima facie case for each essential element of" its claims. *Id.* § 27.005(c). The court must deny the TCPA motion if the nonmovant establishes by clear and specific evidence a prima facie case for each essential element of each claim. *Id.*

## C. The TCPA does not apply

Union Pacific's TCPA motion asserts that the plaintiffs' suit against it is based on or in response to Union Pacific's exercise of its right of free speech and right to petition. The plaintiffs contend that Union Pacific's use of creosote and other toxic chemicals contaminated the soil, air, and water in the Fifth Ward and Kashmere Gardens neighborhoods because Union Pacific "knew or should have known that the creosote plume and other contaminants were a danger to the residents in those neighborhoods." The plaintiffs cite TCEQ's 4th Technical Notice of Deficiency letter in support of the various duties to which Union Pacific was required, but failed, to perform to renew its permit. The TCEQ noted these concerns:

> Review of the August 13, 2018 Monitoring Report indicates that the groundwater plume has migrated approximately 200 feet to the north/northeast affecting additional off-site properties.
>
> - Review of the December 3, 2018 and February 12, 2019, "Off-site Notification Updates" indicate the number of off-site properties

8

impacted by the groundwater plume migration increased from 101 to 110 properties.

- [Union Pacific's] current monitoring well system fails to monitor groundwater protective throughout each of the four transmission zones, therefore, further assessment is needed which includes the installation of the additional wells and monitoring data. Additional assessment is discussed more in details in comment nos. T35(4), T42(4), T43(3), T44(4), T45(4) and T48(3).

- The current assessment of the total petroleum hydrocarbon - non-aqueous phase liquid (TPH-NAPL) seep source(s) and extent is insufficient because only a limited soil which shall include additional soil borings, well installation and monitoring. Additional assessment is discussed in more detail in comment nos. T35(4), T42(4), T43(3), T44(4), T45(4) and T48(3).

- The [Response Action Plan] does not include the implemented TPH-NAPL interim response actions for the Englewood Intermodal Yard cap area. The [Response Action Plan] needs to be revised to include the installed system design, procedures and a schedule for evaluation of the effectiveness of the response action as outlined in comment nos. T35(4), T42(4), T43(3), T44(4), T45(4) and T48(3).

- Evaluation of potential Vapor Intrusion (VI) is needed.

- Since the plume has migrated, the proposed corrective action program consisting of plume management zones (PMZs) with monitored natural attenuation (MNA), and monthly DNAPL recovery contained in the [Response Action Plan] Rev. 3 is inadequate and does not control nor adequately monitor the extent of the plume. The corrective action program in [Response Action Plan] Rev.3 requires revision as outlined in comment nos. T35(4), T42(4), T43(3), T44(4), T45(4) and T48(3).

- [Union Pacific] has failed to obtain the necessary consent from off-site affected property owners for an off-site PMZ. In the April 10, 2017 3rd [Notice of Deficiency], the TCEQ denied [Union Pacific's] request for the Technical Impracticability (TI) for DNAPL removal

9

because [Union Pacific] did not make an adequate demonstration in accordance with 30 TAC §350.33(f)(3)(E) requirements of TRRP.

Therefore, for the proposed PMZ boundary to extend off-site, [Union Pacific] must obtain written consent from all off-site affected property owners to file a restrictive covenant (RC) prohibiting the use of groundwater on their property. However, some off-site property owners have declined consent or cannot be located to obtain consent. Without the consent of the off-site property owner[]s[,] the TCEQ cannot approve an off-site PMZ. There are other avenues which would allow an off-site PMZ without the consent of property owners, but [Union Pacific] has not satisfied those requirements as specified in 30 TAC 350.111(c)(2) and TCEQ Guidance TRRP-16 (TCEQ RG-366/TRRP-16 May 2010).

## 1.    Right of free speech

### a.  Negligence, negligence per se, and nuisance

Union Pacific asserts that the plaintiffs' suit threatened its right of free speech. Union Pacific maintains that the plaintiffs' claims involved communications about matters of public concern and points to a particular statement they are alleged to have made while attempting to obtain the plaintiffs' consent for certain restrictive covenants. Union Pacific points to plaintiffs' allegation that "[Union Pacific] continued to represent to community residents that there was no threat of contamination or human exposure" to the alleged "creosote plume and other contaminants."

The TCPA defines "exercise of the right of free speech" as a "communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). Within that definition, a "communication" means the "making or

10

submitting of a statement or document in any form . . . ." *Id.* § 27.001(1). The TCPA also defines a "matter of public concern" is defined as: "(A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public." *Id.* § 27.001(7).

In viewing the pleadings and evidence in the light most favorable to the plaintiffs, we conclude that the Union Pacific has not carried its burden of establishing that the suit is based on or in response to its exercise of its right of free speech. The alleged statement, alone, does not provide the basis for the legal claims or the impetus for suit. The crux of the plaintiffs' allegations was that Union Pacific concealed information and "communicated too little" about the creosote waste and other toxic contaminants. The plaintiffs sued Union Pacific for claims based on or in response to Union Pacific's failure to adequately warn them of the known dangers associated with the toxic chemicals discharged from its facility. Stated simply, the plaintiffs primarily complained about Union Pacific's conduct, not speech.

Our opinion in *Choctaw Constr. Servs. LLC v. Rail-Life R.R. Servs., LLC*, 617 S.W.3d 143 (Tex. App.—Houston [1st Dist.] 2020, no pet.), provides a useful contrast about the required nexus between speech and the plaintiffs' claims. In *Choctaw*, Rail-Life sued Choctaw for tortiously interfering with its contracts with Union Pacific and alleged multiple claims. *Id.* at 145. The basis of Rail-Life's suit

11

was that Choctaw had made statements (1) falsely accusing Rail-Life's employees of misusing badges to gain access to a railroad facility, (2) falsely accusing Rail-Life's employees of stealing fuel and equipment from Choctaw, and (3) reporting the badge misuse and theft to the authorities. *Id.* at 145–46. Choctaw moved to dismiss Rail-Life's claims under the TCPA and argued that Rail-Life's lawsuit was based on or in response to Choctaw's exercise of the right of free speech and the right to petition. *Id.* at 146. Choctaw contended that it was justified in communicating the violations and relied on federal laws and Union Pacific's policy, which required Choctaw to report any suspicions of unauthorized use of access badges for security and safety reasons. *Id.* at 150–51. We held that the alleged communications were made based on or in response to Choctaw's reporting of badge misuse and theft *Id.* at 151.

Here, though, for the negligence, negligence per se, and nuisance claims, there is only a tenuous nexus between the alleged communication by Union Pacific and the plaintiffs' claims. For these claims, the plaintiffs do not allege that they were injured by Union Pacific's statements. *Cf. Choctaw Constr. Servs.*, 617 S.W.3d at 145. Rather, the substance of the plaintiffs' claims is Union Pacific's alleged conduct. The plaintiffs seek to recover damages for "acts and omissions" of duties that the TCEQ had imposed on Union Pacific.

Statements by Union Pacific on the safety from contamination and human exposure only "relate[ ] to" the negligence and nuisance claims, which was only sufficient under the prior version of the TCPA. *See Cavin v. Abbott*, 545 S.W.3d 47, 69 n.85 (Tex. App.—Austin 2017, no pet.) (relying on dictionaries to define "relates to" as just "some sort of connection, reference, or relationship"); *see also Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 604 (Tex. App.—San Antonio 2018, pet. denied) (interpreting "relates to" as a broad qualifying phrase). Under the prior TCPA statute, the phrase "relates to" allowed defendants to seek dismissal of claims for "tangential communications." *ML Dev, LP v. Ross Dress For Less, Inc.*, No. 01-20-00773-CV, — S.W.3d — , 2021 WL 2096656, at *2 (Tex. App.—Houston [1st Dist.] May 25, 2021, no pet. h.). When the Legislature removed the phrase "relates to" from the current version of the TCPA, the removal of that phrase narrowed the "categories of connections a claim could have to the exercise" of one of three First Amendment rights that allowed a TCPA movant to seek dismissal. *Id*. Thus, Union Pacific had to establish that the plaintiffs' claims for negligence, negligence per se, and nuisance were "based on" or "in response" to its communications. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a). It did not do so. We therefore hold that the TCPA does not apply to the negligence, negligence per se, and nuisance claims. *See, e.g.*, *ML Dev, LP,* 2021 WL 2096656, at *4.

b. Negligent misrepresentation

13

The negligent misrepresentation claim alleges both an affirmative misrepresentation about the safety of the chemicals and a failure to warn. But the TCPA only applies to "communications," not the failure to communicate. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(1) (A "communication" involves the making or submitting of a statement); *Krasnicki v. Tactical Entm't, LLC*, 583 S.W.3d 279, 284 (Tex. App.—Dallas 2019, pet. denied). Courts have declined to rewrite the TCPA to extend the definition of "communication" to include failing to communicate. *See, e.g.*, *Sanchez v. Striever*, 614 S.W.3d 233, 246 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Krasnicki*, 583 S.W.3d at 284. We do the same. Thus, plaintiffs' negligent misrepresentation claim contains a mix of protected and unprotected conduct.

The party seeking relief is the one with the burden to show that they are entitled to it. It is not the court's role to segregate the wheat from the chaff. *See, e.g.*, *Spradlin v. State*, 100 S.W.3d 372, 381 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (an entire affidavit cannot be excluded if only a portion is inadmissible); *Gen. Motors Corp. v. Harper*, 61 S.W.3d 118, 126 (Tex. App.—Eastland 2001, pet. denied) (citing *Speier v. Webster Coll.*, 616 S.W.2d 617, 619 (Tex. 1981)) (a general objection to evidence that does not specify the objectionable portion is properly overruled if any part of that evidence is admissible).

Union Pacific, as the movant, had the burden to show that the negligent misrepresentation claim is based on or in response to its exercise of the right to free speech. *See* TEX. CIV. PRAC. & REM. CODE § 27.005. If a legal action is in response to both protected and unprotected activity under the TCPA, the claim is subject to dismissal only to the extent that it is in response to the protected conduct. *See Navidea Biopharm., Inc. v. Capital Royalty Partners II*, No. 14-18-00740-CV, 2020 WL 5087826, at *4 (Tex. App.—Houston [14th Dist.] Aug. 28, 2020, pet. denied) (mem. op.). "More importantly, it is the defendant's responsibility to segregate the protected conduct from the unprotected; if it cannot, then its motion to dismiss should be denied." *W. Mktg., Inc. v. AEG Petroleum, LLC*, 616 S.W.3d 903, 911 (Tex. App.—Amarillo 2021), *modified on other grounds on reh'g*, No. 07-20-00093-CV, 2021 WL 1152904 (Tex. App.—Amarillo Mar. 18, 2021, no pet. h.); *see Navidea*, 2020 WL 5087826, at *4 (if TCPA movant does not specify how the claim might be segregated the trial court does not err by denying the motion).

In their motion to dismiss, Union Pacific addressed the protected and unprotected components of plaintiffs' negligent misrepresentation claim together. Because Union Pacific did not analyze the protected and unprotected conduct separately, the trial court did not err by denying the motion to dismiss as to negligent misrepresentation. *W. Mktg., Inc.*, 616 S.W.3d at 911. Thus, Union Pacific has not

met its initial burden of showing that any of plaintiffs' claims were based on or in response to its right of free speech.

## 2. Right to petition

Similarly, Union Pacific has not established that any of plaintiffs' claims are based on or in response to communications it made in the exercise of its right to petition. Union Pacific maintains that the plaintiffs alleged that Union Pacific contaminated their neighborhoods and that Union Pacific failed to adequately warn them "about risks associated with potential creosote and toxic chemical contamination." Union Pacific maintains that the plaintiffs alleged that it communicated by "provid[ing] false information regarding the extent of risk associated with exposure to creosote during the course of its business, "continu[ing] to represent to community residents that there was no threat of contamination or human exposure" to the alleged "creosote plume and other contaminants," and "fail[ing] to exercise reasonable care or competence in communicating" information regarding "the risks associated with exposure to creosote or other toxic chemicals." Union Pacific contends that the plaintiffs relied on the letter from the TCEQ, a governmental agency, about its permit renewal application while it was under review.

The "exercise of the right to petition" includes, among other things, "a communication in or pertaining to "an executive or other proceeding before a

16

department of the state or federal government or a subdivision of the state or federal government" or "a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding." *Id*. § 27.001(4)(A)(iii), (B).

As with Union Pacific's free-speech argument, we also conclude that Union Pacific has not established that the plaintiffs' suit is based on or in response to Union Pacific's exercise of the right to petition. Plaintiffs' complaints about Union Pacific's alleged contamination of the residential neighborhoods are complaints about Union Pacific's actions and inaction in the neighborhoods, not its communications with the TCEQ. Union Pacific fails to draw an adequate connection between its right to petition and the plaintiffs' claims to invoke the TCPA under the amended language. *ML Dev, LP,* 2021 WL 2096656, at *5. Union Pacific's communications with the TCEQ merely "relate to" the plaintiffs' claims for negligence, negligence per se, nuisance, and negligent misrepresentation. *Id*. We must presume that the Legislature intended its removal of the phrase "relates to" to limit the TCPA's reach, and Union Pacific has failed to establish its applicability here. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) ("We presume . . . that words not included were purposefully omitted."). Union Pacific has not met its burden of showing that the plaintiffs' suit is based on or in response to its exercise of its right to petition.

## Conclusion

Union Pacific did not meet its burden to show that plaintiffs' suit was based on or in response to its exercise of its right to free speech or to petition under the TCPA. Thus, the trial court did not err in denying Union Pacific's motion to dismiss. We affirm.[6]

Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Landau and Countiss.

---

[6] We deny all pending motions or requested relief by Union Pacific.